All right, thanks everyone. Our fifth case this morning is the United States against Hector Castaneda. Mr. Henderson, good morning. Good morning. May it please the court. My name is Peter Henderson. I represent Hector Castaneda. The district court plainly erred in miscalculating the guidelines term of supervised release. It is a plain error. I've addressed the waiver argument in the briefs and I don't think I need to elaborate much on that. This just was missed by everybody. The Supreme Court has said that these sorts of errors are presumptively reversible errors under the plain error test and so the sentence should be vacated and the case remanded for resentencing. What's different here from Canfield? There was absolutely no affirmative representation by the defense here that they believed five years was the appropriate range for this. It's the unnoticed guidelines error that nobody picks up on such as hymies hymies. Well, Wiley didn't involve a guidelines error, I suppose, but it involved a misapprehension of sentence that was not caught. There were no objections, other objections. There was initially an objection from both sides to aspects of the guidelines calculation but those were dropped, as I understand it, at the top of the hearing. Right. The objections were to the prison calculation. They were withdrawn. Nobody even mentioned the supervised release term. So in Canfield we had the defense lawyer saying, look, you have to give five years, so give five years of supervised release but then reduce the prison sentence. That's a waiver, as the court found. Here we don't have that intention, intentionality. Well, there was also some selective argument in that case about the conditions of supervised release, as I recall. I think so. I mean, I think the bottom line was the defense asked for a five-year term of supervised release and so that's that's waiver. You know, we, I think the defense argued there that, well, everybody was mistaken but that sort of affirmative representation has always been considered waiver. We don't have any affirmative representation here or acceptance of this particular supervised release term. It's, so it is a plain error. I think the real question and the controversy in this case is what should the remand look like? What should the scope of resentencing be? In order to determine what an appropriate term of supervised release ought to be, the parties will argue and the district court will have to determine under the section 3553A factors what that term looks like. It's a negligible incremental burden to have the district court fill in some of the gaps as it comes to the prison term as well. I think what the court might look at is compare Mr. Miller, the prosecutor's argument in response to Mr. Castaneda's arguments. Pages 8 through 14 of the sentencing transcript, Mr. Miller thoroughly directly addresses Mr. Castaneda's arguments. He gets the, obviously he disagrees with them, but then when it comes to the court we don't see that direct addressing of the arguments. We see some veiled references. I think the closest the court gets is to say I'm not real concerned about deterrence to you but I am concerned about deterrence to others. But that that one sentence I don't think does an adequate job of explaining all of the factors and mitigation that Mr. Castaneda brought up. The safety valve, he was truthful in discussing this with the government. His age, one case I would direct the court to is the United States versus Presley. In that case the court had a strange mandate line where it said affirmed and remanded because what the court found was that the district court had not really taken into consideration a lot of the age and lack of recidivism that aging criminals in ordering a lengthy sentence that would keep the defendant incarcerated into his 60s. How is the district court's line about I'm not really concerned about deterrence when it comes to Mr. Castaneda not a response to Mr. Castaneda's argument that his age meant there was a lower risk of recidivism therefore there was less of a need for specific deterrence? Well it could mean that. It could mean I'm not concerned because he has no other criminal history. It could mean I'm not concerned because he gave a truthful account and met the safety valve factors. I mean it could be responsive to every argument. What we're suggesting is the district court needs to take more care in actually being more explicit about how it's weighing that factor with these I mean that one line is the closest it gets but it doesn't really give us much insight into when you say I'm not concerned about deterrence does that mean you've accepted all of my arguments wholesale and you just think the seriousness of the offense outweighs it? It certainly necessarily addresses the low risk of recidivism that Judge Mim felt was an issue. He's not concerned period and let's go to the next. Yeah I suppose that's true. I suppose the ideal of what I would like to see and maybe it's not required by the law but I think that section 3553 C points us in that direction is to have the district court more explicitly tell us how I am weighing the importance of these factors against each other because at the end of the day Mr. Castaneda walked out of the sentencing hearing and said well the judge seemed to agree with me that there were lots of mitigating factors in my case and yet I received a sentence that's towards the upper end of the guidelines range and and so you know I understand the judge said it's serious and you fled and I'm concerned about deterrence to others. Are you yielding too much when you said maybe it's not 24 months to indicate why they land at a certain point on a range? Right and that and that's why I say we have that here. I don't think we do. I think the difficulty with any sentencing is the numbers are always to a certain extent arbitrary and it's up to a district judge to determine here's where I'm going to land but I do agree or I would argue that here we don't have any indication if if you agree with all of the mitigating factors and the aggravating factors are what they are how did we arrange at this place in the range under 3553 C which does require in in our opinion at least a more explicit telling of how we're weighing the factors against each other. I think all of this is I suppose academically very interesting. I think the better course rather than try to infer what the district court may have meant by one sentence is in remanding for redetermination of the term of supervised release to open up the resentencing to the term of imprisonment as well and let let the district court make its record. You know tell the district court we you know it's it's up to you to determine the sentence. This court is deferential to the district court sentences but we want to make sure we've understood. Under that circumstances if we do that could Judge Mim give him a little more time here? You know he got ten months less as I recall than either of the co-defendants. Technically theoretically yes he could. I don't see any reason I mean if there were misconduct after sentencing I guess that's the judgment. What we'd ask is that Judge Mim be again asked to reconsider the 3553A factors and so that's that that's a possibility just as a lower sentence might be a possibility upon reconsideration of those factors. Unless there's anything else I'll save my time for rebuttal. Thank you. That's fine. Thank you. Mr. Miller. May it please the court. Counsel I believe the last request by appellate counsel on behalf of Mr. Castaneda shows what was really important to Mr. Castaneda now in its sentencing and that was of course the sentence of imprisonment that he faced. And it wasn't the period of supervisor release obviously. And that usually is the case and in this case your honor we would suggest before I know Mr. Anderson wanted to move quickly past waiver but we believe that this case is is Canfield. That this is if we look at the cases that are cited by defense counsel Rosales and Wiley where waiver wasn't an present this case. There were three factors in Canfield that they looked at for waiver and this was on a five-year supervised release term that was imposed. That was advanced notice, the opportunity to object, and an intentionality. And I think everyone agrees here there was advanced notice given. The guideline range that that we all agree was air was contained in the pre-sentence report. So there's advanced notice given to the defendant and the always is in these cases on a PSR information. And there was no objection from the defense to that that range. And in fact then the defense filed a sentencing commentary which focused entirely on the period of imprisonment and did not discuss the period of supervised release. The United States filed a sentencing commentary that did request a five-year term of supervised release in the commentary. Then the matter went to sentencing before judgment. And here is the intentionality and the question is was it was it an accident or was it an intentional? That's that's what Canfield says. And in this case the court first addressed the defendant specifically, you've had an opportunity to review the report, you reviewed it with your counsel, is there anything in there that you believe is inaccurate or that you object to? He said everything is fine. And then later in the hearing as the court went over the terms of supervised release, which included the five-year term of supervised release, he said, did you go over all these terms of supervised release with your client? Counsel said yes. Is there anything in there? But counsel never expressly endorsed the erroneous five years to life range. And they, and I agree, you know, neither did Castaneda, but he didn't recognize the error. They failed to object. That amounts to a forfeiture, not a deliberate waiver. We can review for plain error. And it, I just, both the reasons reference the wrong range, and seems to me that's a type of mistake that ordinarily requires a remand. Your Honor, a remand for how much? Well, initially we, our position still is that this is waivers. You look at Canfield and look at the language used there, because we want the parties. The court has said this in Lewis, courts are busy. Courts want to focus on what matters, especially district courts, to what matters to the parties. And therefore, parties should object when they have things before them. In the PSR context, in the supervised release context, the courts made it clear. Those factors are in front of the defendants, as it was in this case. And that by reading them and then not objecting to them specifically, that, that can, and it does, for example in Canfield, amount to waiver. Yes, in Canfield they said give five years, whereas in this case they just didn't mention supervised release. But is, is the suggestion then that the defendant who, who, who recommends the erroneous supervised release versus the person who doesn't mention, that that is a waiver for the person who mentions it. When here, and again in Canfield the language says, they talk about this, we don't, the court says it might have been a mutual mistake. It might have been an oversight. It might have been negligence of counsel. It may have even not been strategic at all. But it was still intentional. And therefore it's a waiver. In this case it was intentional. Both the defendant and the defendant's counsel said they had no objection to that range that was in, in the PSR. And we want to encourage defendants to object. And the, and here's the, here's the big difference because they didn't mention it. If, if the counsel had come forward as in, for example, Rosales and recommended a lower sentence, we'd like four years of supervised release. We'd like three. We'd like two. Then we'd say, oh, well they wanted less than that range. And even though they omitted that, you know, missed that range, perhaps that doesn't rise to the level of intentionality. In this case, we have them not objecting at all to what they knew the range was listed as, and then not even requesting any specific term of supervised release, knowing the United States had requested in both the commentary and at sentencing a five-year term of supervised release. And I would suggest if you look at Canfield, it's waiver. The Wiley case that's relied on, it's, says clearly at the beginning that the government did not assert waiver in that case. So that wasn't an issue. And so we, we do, with all due respect, believe that this does rise. If you look at Canfield and then look at the facts of this case, this rises to, to waiver. But if, I understand Judge Stroganoff's comment, this moves on to plain air review, then we get to, we agree the first three prongs are met under the law, and we get to the fourth context of this case. And Rosales says every case is very fact-intensive. And we look at specifically to see if in that particular case that fourth prong is met. Lewis found that where the substantive content of a supervisory term will not take effect for many years, and that's the case here, and it can be revised at any time, which is the case here, we see no threat to the fairness, integrity, or integrity of the court. And it distinguished that finding and, and found that there was plain air in a case, and it distinguished it by saying there was judicial air in the Wiley case, because there the court found that it did not have the discretion to go, go below the five-year term of supervised release. And so it found that that did meet the fourth prong, but that's not in this case. In this case, the court clearly understood that it had the discretion to give a sentence below five years on supervised release. We're not certain of that. The record doesn't establish that in the way that... Well, I think the court usually holds that when the court adopts the pre-sentence report, it adopts the findings in the pre-sentence report, which stated clearly that based on the safety valve, the court had the discretion to sentence below the mandatory minimum when it came to the supervised release term. There was no recalculation of the supervised release term in the PSR? Of the guideline, advisory guideline, but as far as the statutory maximum goes... I mean, there was a reference to the safety valve, that you're not bound by... But the guidelines are merely advisory, and the court was instructed in the PSR and then corrected also at sentencing when the court talked about the mandatory minimum, and the government said, Your Honor, there is no mandatory minimum in this case because of the safety valve. But without reference to the PSR. That's correct. That's correct. But again, there's been no... The PSR made it clear to the court that it could go below the mandatory minimum. The government made it clear at sentencing it could go below the mandatory minimum, so we would have to assume that the court didn't understand what was in the PSR that it accepted. And are you satisfied with the government's correction here? I mean, when the government attempted to correct the court on the mandatory minimum, the statute says you may sentence below the mandatory minimum. The statute says you shall not sentence with regard to the mandatory minimum. Are you saying so there's a... Well, I guess, and that was me that was making that statement, Your Honor. The guidelines at that time... That's what the government said in the transcript. No, that's correct. That's correct. The guidelines at the time were 121 to... Sentence of imprisonment, the mandatory minimum was 120. That didn't apply. So I'm trying to understand. So the statement to the court was the mandatory minimum does not apply, so you may sentence without regard to the mandatory minimum. And you're saying that the language should have been, you shall not consider the mandatory minimum? Shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum. Right, which is what's stated in the PSR, correct? And it's clear that the judge understood that nuance. And if you're telling me it's not clear, then you're the decision-maker. I'm asking you to defend that. But at sentencing, I don't believe there was any concern by any of the parties that the judge did not understand that. After the government corrected it, the defense... The government clearly addressed it. Mr. Castaneda talked about it. Where do you have the court addressing it? Well, and we cited the case in our brief to discuss what this court has said, as far as discussing the safety valve itself, if that's contained in the PSR, which it is, and is discussed with the court at sentencing, which it was. The court isn't specifically required to address safety valve, but it is required to address the 3553A factors. And principal arguments in mitigation. Absolutely. Absolutely. And we've set forth, and I'm seeing I'm out of time, but we've set forth in our brief that obviously we would always like district courts, especially in these appeals, to have said more. But we believe that Judge Mim, who is a very busy district judge, as all district judges are, did say enough, as we set forth in our brief, to address principal arguments in mitigation. Thank you. Thank you. Mr. Henderson. I wanted to briefly revisit the waiver issue, just because we've got different doctrines here, and I think the government is saying it's either advance notice or chance to object. That's about de novo review. The predicate for plain error review is the person had advance notice. If they didn't, then it's Rule 51, it's subject to de novo review. And that they didn't object. If they had, it's preserved, and it's de novo review under Rule 51. And so really the key element on waiver is intentionality, and in this record, there's just no indication whatsoever that this error. The last thing that I would say, I don't think the record makes it very clear that the judge understood exactly how the mandatory minimums played into the sentence. He came into the sentencing and he thought there was a mandatory minimum. So we do have some presumptions or inferences on appeal about if you adopt the PSR, then you know everything that's in it. I think in this case, that was shown that that's not always true. And then after imposing sentence, the judge indicated that it believed that the count of conviction carried a mandatory minimum penalty. And that's not true on the statement of reason. So again, we think that there's too much uncertainty in this record to affirm the prison sentence, and so we'd ask for a remand for full resentencing. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement.